AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT



LODGED
CLERK, U.S. DISTRICT COURT

**3/13/26**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MRV _____ DEPUTY

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT

3/13/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ asi _____ DEPUTY

United States of America

v.

Bernardo Carachure Hernandez,

Defendant

Case No.   2:26-mj-01474-DUTY

## AMENDED CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, John Otis, the complainant in this case, state that the following is true to the best of my knowledge and belief.  On or about the date of March 10, 2026 in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assault on a Federal Officer |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/*
*Complainant's signature*

John Otis, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:      3/13/26

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. A. Joel Richlin, U.S. Magistrate Judge
*Printed name and title*

AUSA: Eric L. Mackie x3289

<u>**AFFIDAVIT**</u>

I, John Otis, being duly sworn, declare and state as follows:

### I.   <u>PURPOSE OF AFFIDAVIT</u>

1.   This affidavit is submitted in support of a criminal complaint against Bernardo Carachure Hernandez ("CARACHURE") for a violation of 18 U.S.C. § 111(a)(1): Assault on a Federal Officer.

2.   The facts set forth in this affidavit are based upon my personal observations; my training and experience; information obtained from other law enforcement officers involved in this investigation; witness interviews; reports prepared by other law enforcement officers; and digital evidence reviewed during the course of the investigation.

3.   This affidavit is intended to establish probable cause for the complaint and does not set forth every fact known to me or to other law enforcement officers involved in this investigation. Unless otherwise indicated, all statements described herein are related in substance and in part only, all dates and times are approximate, and all conversations are summarized.

### II.   <u>BACKGROUND OF SPECIAL AGENT JOHN OTIS</u>

4.   I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), a component of the United States

Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). I have been employed as an HSI Special Agent since July 2017 and am currently assigned to the HSI Ventura office in Ventura, California.

5. As an HSI Special Agent, I investigate violations of federal law, including assaults on federal officers, immigration offenses, child exploitation offenses, cybercrimes, human smuggling, narcotics trafficking, weapons trafficking, financial crimes, and export violations.

6. During my career as a Special Agent, I have participated in numerous criminal investigations involving the execution of arrest warrants and the apprehension of individuals. My duties have included conducting surveillance, reviewing surveillance footage, executing search and arrest warrants, interviewing witnesses and victims, reviewing physical and digital evidence, and coordinating with other law enforcement officers during arrests.

7. Through my training and experience, I am familiar with the tactics individuals sometimes use to resist law enforcement officers, including fleeing from officers, physically striking officers, biting officers, and using nearby objects as weapons to prevent arrest.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

8.   On March 10, 2026, officers with ICE Enforcement and Removal Operations ("ERO") attempted to execute an administrative immigration arrest warrant for CARACHURE outside the Santa Barbara County Jail in Santa Barbara, California.

9.   During the course of attempting to arrest him, CARACHURE fled from officers and engaged in a physical struggle with ICE Deportation Officer ("DO") William Loper, during which CARACHURE:

   a. punched DO Loper in the face,

   b. bit DO Loper's finger hard enough to break the skin and cause bleeding, and

   c. struck DO Loper in the head with a wooden branch or similar object.

10.   Based on the facts described below, there is probable cause to believe that CARACHURE forcibly assaulted, resisted, opposed, impeded, and interfered with a federal officer while the officer was engaged in the performance of his official duties, in violation of 18 U.S.C. § 111(a)(1).

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

11.   On March 10, 2026, at approximately 11:30 a.m., officers assigned to ICE Enforcement and Removal Operations ("ERO"), Los Angeles Field Office, Ventura Sub-Office were positioned outside the Santa Barbara County Jail, located at

4436 Calle Real, Santa Barbara, California, in order to execute an administrative immigration arrest warrant for CARACHURE as he was being released from an March 9, 2026 arrest by California Highway Patrol for driving under the influence of alcohol.

12. The officers present included Deportation Officers William Loper, James Bell, Jose Schnieder, and Sayed Banihashemi (collectively referred to as the "officers").

13. The following information was provided to me by DO Loper, who was directly involved in the arrest attempt.

**A. CARACHURE Flees the Officers**

14. At approximately 12:30 p.m., CARACHURE exited the Santa Barbara County Jail through an exterior office door.

15. DO Loper, who was wearing a police vest clearly marked "POLICE/ICE," approached CARACHURE and identified himself as an ICE officer in the Spanish language. DO Loper asked CARACHURE to identify himself, and CARACHURE responded that his name was "Bernardo."

16. DO Loper then instructed CARACHURE not to move. CARACHURE responded, "What did I do?" and immediately fled on foot. CARACHURE ran toward County Road, and DO Loper pursued him while repeatedly issuing verbal commands to stop.

17. During the pursuit, DO Loper unsuccessfully attempted to deploy Oleoresin Capsicum ("OC") spray in an effort to gain compliance and stop CARACHURE from fleeing.

B. **CARACHURE Punches, Bites, and Attacks DO Loper**

18.    CARACHURE continued running until he reached a wooded area near the intersection of County Road and Calle Real.  DO Loper described the area to me as containing dense vegetation, shrubs, and trees.

19.    While in this area, CARACHURE fell onto his back. DO Loper moved in to detain him and deployed OC spray. As DO Loper attempted to take CARACHURE into custody, CARACHURE punched DO Loper in the face.

20.    During the subsequent struggle, DO Loper attempted to control CARACHURE's arms in order to handcuff him. CARACHURE then bit DO Loper's right index finger. DO Loper ordered CARACHURE to release his finger, but CARACHURE refused to let go, causing the skin on DO Loper's finger to break and bleed.

21.    In order to force CARACHURE to release his finger, DO Loper struck CARACHURE in the head. CARACHURE eventually released DO Loper's finger. DO Loper's finger was bleeding heavily.

C. **CARACHURE Assaults DO Loper with a Tree Branch**

22.    While the struggle continued, CARACHURE grabbed a wooden tree branch or similar object and swung it at DO Loper,

striking him on the side of the head. This momentarily stunned DO Loper.

23.  The following photograph depicts the wooden branch recovered at the scene that DO Loper reported CARACHURE used to strike him during the struggle described above:



24.  Following the strike to his head, DO Loper disengaged momentarily and stepped back to create distance between himself and CARACHURE. When DO Loper observed that CARACHURE still held the branch, DO Loper drew his service weapon and ordered CARACHURE to drop the object. CARACHURE complied with the

command and dropped the branch but continued to attempt to flee from DO Loper.

### D. **CARACHURE Bites DO Loper's Thumb**

25.   DO Loper holstered his weapon and continued pursuing CARACHURE. Eventually DO Loper grabbed CARACHURE by the belt from behind. DO Loper was able to handcuff CARACHURE's right wrist, but CARACHURE continued resisting and refused to allow his left wrist to be secured.

26.   During the continued struggle, DO Loper attempted to apply pain compliance techniques and struck CARACHURE near his left ear in order to gain compliance.

27.   At that point, CARACHURE bit DO Loper's left thumb. In response, DO Loper delivered several strikes. CARACHURE eventually released his grip on DO Loper's thumb and stopped resisting. DO Loper was then able to fully handcuff CARACHURE and place him under arrest.

28.   As a result of CARAUCHE's actions, DO Loper received medical treatment for his injuries, including wounds, bruising, and bleeding to his fingers and head. The below image depicts some of the injuries CARACHURE inflicted on DO Loper:



### E. Post-Arrest Interview

29.  The same day, at approximately 6:22 p.m. HSI Special Agent Alexander Hart and I conducted a Miranda advisement of CARACHURE in the Spanish language. CARACHURE was provided a Miranda rights form written in Spanish, which he signed, indicating that he understood his rights. CARACHURE declined to make a statement.

//

//

## CONCLUSION

30. Based on the foregoing, there is probable cause to believe that CARACHURE has committed a violation of 18 U.S.C. § 111(a)(1): Assault on a Federal Officer.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1
on this 13th day of
March, 2026.

_____

HONORABLE A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE