TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
ERIC L. MACKIE (Cal. Bar No. Pending)
Assistant United States Attorney
Major Crimes Section
  1300 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-3289
  Facsimile: (213) 894-0141
  E-mail: eric.mackie@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:26-cr-00182-AB |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPEAL OF DETENTION ORDER |
| v. | |
| BERNARDO CARACHURE HERNANDEZ, | **Exhibit A has been filed manually.** |
| Defendant. | Hearing Date: April 22, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. André Birotte Jr. |

Plaintiff United States of America, by and through its counsel of record, the Deputy Attorney General for the United States of America, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Eric L. Mackie, hereby files its Opposition to Defendant Bernardo Carachure Hernandez's Appeal of the Magistrate Judge's Detention Order.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 3, 2026                    Respectfully submitted,

                                        TODD BLANCHE
                                        Deputy Attorney General

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                        Attorney

                                        ALEXANDER B. SCHWAB
                                        Assistant United States Attorney
                                        Acting Chief, Criminal Division


                                            /s/ Eric L. Mackie
                                        ERIC L. MACKIE
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION................................................1

II.   STATEMENT OF FACTS..........................................2

III.  LEGAL STANDARD..............................................4

IV.   ARGUMENT....................................................5

      A.    Defendant's Flight from Officers Was Both a "Serious"
            Flight Risk Under § 3142(f)(2) and Compelling Evidence
            of Future Risk of Nonappearance.......................5

      B.    Defendant Poses a Clear Danger to the Community, and
            No Condition of Release Will Reasonably Assure the
            Safety of the Community...............................7

            1.    The Nature and Circumstances of the Offense Are
                  Extraordinarily Serious.........................7

            2.    The Weight of the Evidence Is Substantial and
                  Cannot Be Dismissed by Reference to Other
                  Acquittals......................................8

      C.    Defendant's History and Characteristics, Fairly
            Considered, Support Detention........................10

      D.    Defendant's Immigration Status Provides an Independent
            Additional Incentive to Flee That the Court May
            Properly Consider....................................12

      E.    The Proposed Conditions of Release Are Inadequate.....13

      F.    The Magistrate Judge's Findings Were Correct, and the
            District Court Does Not Have to Start Over...........14

V.    CONCLUSION.................................................15

**TABLE OF AUTHORITIES**

DESCRIPTION                                                      PAGE

United States v. Diaz-Hernandez,
   943 F.3d 1196 (9th Cir. 2019) ...................................1, 8
United States v. Gebro,
   948 F.2d 1118 (9th Cir. 1991) ..................................... 5
United States v. Hir,
   517 F.3d 1081 (9th Cir. 2008) ................................ 11, 14
United States v. Koenig,
   912 F.2d 1190 (9th Cir. 1990) ................................. 5, 14
United States v. Motamedi,
   767 F.2d 1403 (9th Cir. 1985) ..................................... 4
United States v. Santos-Flores,
   794 F.3d 1088 (9th Cir. 2015) ................................. 9, 12
United States v. Tortora,
   922 F.2d 880 (1st Cir. 1990) .................................... 14
United States v. Townsend,
   897 F.2d 989 (9th Cir. 1990) .................................... 13
United States v. Winsor,
   785 F.2d 755 (9th Cir. 1986) ..................................... 5
Yousefian v. City of Glendale,
   779 F.3d 1010 (9th Cir. 2015) ................................... 10

Statutes

18 U.S.C. § 3142(e)(1) ............................................. 4
18 U.S.C. § 3142(g) .............................................1, 5
18 U.S.C. §§ 111(a)(1) ............................................. 7

Rules

U.S.S.G. § 1B1.1................................................... 10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

There is no dispute that defendant Bernardo Carachure Hernandez ("defendant") demonstrated he is a flight risk. He ran. Fast. From a uniformed federal officer wearing a vest that said "POLICE/ICE" in large letters, the morning after posting bond on a separate arrest. That flight, which documented on the Santa Barbara County Jail surveillance video in Government Exhibit A, is not contested. And it is not ambiguous. Defendant then punched an ICE Deportation Officer in the face, bit his finger hard enough to break the skin and cause heavy bleeding, struck him in the head with a wooden tree branch, and then bit his thumb when the officer resumed attempting to secure the arrest. All of this violence was in service of one goal: escaping federal custody. This is what led Magistrate Judge Stephanie S. Christensen to order detention. Her findings were correct and should be affirmed.

Defendant's primary effort to deflect from these facts is to argue that **other** defendants charged with assaulting federal officers — in **other** cases with different facts, different officers, and different evidence — went to trial and were acquitted, and that the government has dismissed other similar cases. What defendant omits is that many, many more such prosecutions have resulted in guilty pleas. But more fundamentally, none of it matters. The Bail Reform Act mandates an individualized determination based on **this defendant**, **this offense**, and **this evidence**. See <u>United States v. Diaz-Hernandez</u>, 943 F.3d 1196, 1199 (9th Cir. 2019). Whether other defendants in other cases were convicted, acquitted, or had their cases dismissed is not a factor under 18 U.S.C. § 3142(g) and has no

bearing on this Court's analysis. What does have bearing is this: a United States Magistrate Judge reviewed a sworn affidavit and made a probable cause determination that defendant committed assault on a federal officer. That affidavit is corroborated by direct evidence that includes surveillance video of the flight (see Gov't. Ex. A), photographs of the officer's bite wounds, photographs of the recovered tree branch, and medical records from the officer's treatment. Defendant has no answer to that evidence. Acquittals elsewhere do not address it.

Defendant's appeal is long on character evidence and short on answers to the central question Judge Christensen identified: what happens when pretrial supervision officers — who are arms of this Court — interact with a man who has shown a pronounced willingness to punch, bite, and strike law enforcement with a tree branch rather than submit to authority? The answer defendant gives is essentially: "trust us, he'll be fine." The Bail Reform Act does not require the Court to take that risk. The detention order should be affirmed.

## II. STATEMENT OF FACTS

On March 10, 2026, ICE Enforcement and Removal Operations ("ERO") officers were positioned outside the Santa Barbara County Jail to execute an administrative immigration arrest warrant for defendant. Defendant had been arrested the night before by the California Highway Patrol for driving under the influence, posted a $5,000 bond, and was being released. Deportation Officer William Loper, who wore a vest clearly marked "POLICE/ICE" in large letters, approached defendant in Spanish, and defendant identified himself. When DO Loper instructed him not to move, defendant immediately sprinted away.

The Santa Barbara County Jail surveillance video captures this flight.  See Gov't. Ex. A.  It is not an ambiguous moment of hesitation.  Defendant ran — fast — from a uniformed federal officer who had plainly identified himself.  The pursuit led into a ravine approximately a quarter mile from the jail, set deep off the side of the road and invisible from street level.  The three remaining ERO officers were unable to see where DO Loper and defendant had gone and drove around searching.  DO Loper pursued defendant.

Once in the ravine, the assault began.  In sequence, defendant: (1) punched DO Loper in the face; (2) bit DO Loper's right index finger hard enough to break the skin and cause heavy bleeding and refused to release it; (3) grabbed a wooden tree branch and swung it at DO Loper's head, momentarily stunning him; and (4) bit DO Loper's left thumb when DO Loper resumed efforts to secure the arrest.  DO Loper required medical evaluation and treatment at Adventist Health Simi Valley Hospital for bite wounds that broke the skin, lacerations, bruising, and head injuries.  See Gov't Ex. B.  The below images depict some of the injuries defendant inflicted on DO Loper, each of which is consistent to DO Loper's account:

 

3

The following photographs depicts the wooden branch recovered at the scene that DO Loper reported CARACHURE used to strike him during the struggle described above, which includes a photo showing a red stain – possibly blood – on it:

 

Defendant was ultimately arrested.

On March 19, 2026, Judge Christensen conducted the continued detention hearing.  The defense submitted over 25 letters of support, school records, employment records, and photographs.  Judge Christensen reviewed all of them and acknowledged the outpouring of support, describing it as "an outpouring of love from a community who cares deeply about your client."  Tr. at 6:24-25.  Nevertheless, the court concluded that the government had met its burden on both flight risk and danger, ordering detention.  This appeal followed.

**III. LEGAL STANDARD**

The Bail Reform Act mandates pretrial detention where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk — the government need not establish both. United States

4

v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). The government bears the burden of establishing risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence. United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

This Court's review of the magistrate judge's detention order is de novo, but the Court **"is not required to start over . . .** and proceed as if the magistrate's decision and findings did not exist." United States v. Koenig, 912 F.2d 1190, 1192–93 (9th Cir. 1990) (emphasis added).  The Bail Reform Act requires an individualized evaluation guided by the four factors enumerated in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986).

As explained below, all four factors weigh in favor of detention.  Defendant poses a clear and ongoing danger to the community and a serious risk of nonappearance, and no condition or combination of conditions can adequately address either.

**IV.  ARGUMENT**

**A.    Defendant's Flight from Officers Was Both a "Serious" Flight Risk Under § 3142(f)(2) and Compelling Evidence of Future Risk of Nonappearance.**

Defendant's principal threshold argument is that his flight from officers constitutes "resistance to arrest," not a "serious" flight risk under § 3142(f)(2), because § 3142(f)(2) requires more than

ordinary risk of flight.  This argument is unavailing.

Defendant's flight, was not merely "resistance to arrest"; it was a sustained, documented, video-captured sprint away from a clearly identified federal officer.  As Judge Christensen found, this conduct, together with the extreme violence that followed, demonstrates "a resistance to complying with any orders of this Court and a willingness to use force when confronted by authority."  Tr. at 13:19-23.  Defendant's own brief concedes that he ran from officers.  The jail surveillance video confirms it.  That flight, which was committed the day after defendant was released on a $5,000 bond (the same bond he seeks here) is direct evidence that defendant does not comply with legal obligations when confronted with adverse consequences.

Defendant is correct that flight from arrest and failure to appear for court are analytically distinct.  But they are not unrelated.  Both reflect the defendant's willingness to prioritize his own liberty over his legal obligations.  A defendant who sprints away from a uniformed federal officer the morning after posting bond and then assaults that officer four times rather than submit to arrest has given this Court a real-world demonstration of how he responds to legal authority.  The Bail Reform Act asks whether conditions will "reasonably assure" appearance.  They will not.

6

**B.** **Defendant Poses a Clear Danger to the Community, and No Condition of Release Will Reasonably Assure the Safety of the Community.**

    1.   <u>The Nature and Circumstances of the Offense Are Extraordinarily Serious.</u>

The charged offense — assault on a federal officer by deadly or dangerous weapon and resulting in bodily injury, in violation of 18 U.S.C. §§ 111(a)(1) and (b) — reflects a sustained act of violence against a law enforcement officer performing his official duties. This is not a case involving a single impulsive act. Defendant engaged in four distinct acts of violence over the course of a prolonged struggle: a punch to the face, a bite to the finger that broke the skin, a strike to the head with a wooden tree branch, and a bite to the thumb. Each act was deliberate. Each was in response to a lawful exercise of law enforcement authority. And each escalated when prior force failed to achieve defendant's objective: escaping custody.

Defendant characterizes the charged offense as one where "the nature and circumstances warrant setting bail" because § 111 is not listed as a presumption offense under § 3142(e)(3). That is true as far as it goes. But the absence of a statutory presumption does not transform the nature of the offense. This Court must still evaluate what defendant actually did, and what he did was extraordinarily violent.

Judge Christensen said from the bench: "I've never seen anything like it. I've never seen anything like the type of violence that was inflicted by your client, allegedly, on the arresting officers." Tr. at 7:7-9. That observation from an experienced federal magistrate

7

judge who has presided over many detention hearings captures the gravity of this offense better than any abstract characterization.

Defendant further invokes other cases in this District where courts have set bond in § 111 matters, listing eight cases with $5,000 or $10,000 bonds.  But defendant does not describe the facts of those cases.  The Bail Reform Act mandates an individualized determination; outcome comparisons to other cases without factual context are entitled to no weight.  United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019) (categorical approaches are impermissible; the Act mandates "individualized evaluation").  The question is what defendant did, not what others were alleged to have done in cases whose facts are unknown.

Assaults on federal officers represent a grave threat to the administration of justice and the rule of law.  Congress recognized this when it enacted § 111(b), which carries a maximum sentence of 20 years for assaults involving a deadly or dangerous weapon or resulting in bodily injury.  Defendant used both.  The magistrate judge appropriately weighed the serious nature of this offense, and this Court should do the same.

2.    The Weight of the Evidence Is Substantial and Cannot Be Dismissed by Reference to Other Acquittals.

Defendant argues at length that the Federal Public Defender's Office has obtained acquittals in "almost all trials stemming from immigration enforcement actions" involving assault charges, and that the government has dismissed over a dozen similar cases.  From this, he urges the Court to discount the weight of the evidence here.  This argument fails for two independent reasons.

First, acquittals in other cases with different facts, different officers, different evidence, and different juries are entirely irrelevant to whether there is probable cause to believe defendant committed the charged offense in this case.  The weight-of-the-evidence factor under § 3142(g)(2) asks about this case.  See United States v. Santos-Flores, 794 F.3d 1088, 1092 (9th Cir. 2015) (considering specific weight of evidence against defendant at issue).  Outcomes in other cases say nothing about the strength of the government's evidence here.

Second, the evidence in this case is not weak.  DO Loper directly witnessed and experienced every act of violence defendant inflicted.  The assault occurred in the course of a supervised federal law enforcement operation with multiple officers who converged at the scene after the arrest.  Photographs document DO Loper's bite wounds, which are visible and verified by medical treatment.  Photographs also document the tree branch recovered from the scene.  Jail surveillance video captures defendant's flight.  The sworn affidavit is also corroborated by the photographs of defendant's own post-arrest condition, including what appears to be a lacerated or bloodied tongue.  See Def. Mot. 11.  This is likely the result of defendant biting his own DO Loper's finger in thumb and his own tongue during the struggle.  This is not a case that depends on a single officer's uncorroborated word.

Defendant's speculation about the branch is also flatly contradicted by the evidence.  Defense counsel characterizes the branch as "large and heavy" and suggests that a blow from it would have rendered DO Loper unconscious or caused "far more grave injuries."  That characterization is not supported by the record, and

is now directly refuted by it.  On April 2, 2026, HSI Special Agent John Otis examined and documented the branch.  Gov't Ex. C.   It measures thirty-four inches in length and weighs approximately six pounds.  It is meaningfully liftable with one hand.  A six-pound, thirty-four-inch wooden branch swung at a person's head is plainly capable of inflicting serious bodily injury or death, which is the legal standard.  See U.S.S.G. § 1B1.1, App. Note (1)(E).  Defense counsel's lay speculation about what injuries "would very likely" have resulted from the branch is entitled to no weight against a documented, measured, and photographed piece of physical evidence.

Defendant also challenges whether the tree branch was actually used, speculating that blood on the branch could have come from general "tussling" rather than a deliberate strike.  This is a trial argument.  DO Loper, the direct victim, reported that defendant grabbed the branch and swung it at his head, momentarily stunning him.  That sworn account, corroborated by the branch's recovery at the scene, establishes probable cause. As the Ninth Circuit has made clear, the mere existence of a defense theory does not negate probable cause.  Yousefian v. City of Glendale, 779 F.3d 1010, 1014 (9th Cir. 2015).  The weight of the evidence factor favors detention.

**C.    Defendant's History and Characteristics, Fairly Considered, Support Detention.**

The government does not dispute that defendant has genuine community ties, a strong employment record, no prior criminal convictions, and a network of family and friends who care about him deeply.  Judge Christensen acknowledged all of this: "He clearly has deep ties to the Santa Barbara community."  Tr. at 7:5-6.  But she correctly observed that the letters from his community are "guesses

10

about what his behavior would be," while "what I have here in this very detailed Affidavit" reflects "his actual behavior" when confronted by law enforcement.  Tr. at 7:13-17.

That distinction is legally significant and practically important.  Defendant's employer writes that he peaceably resolved workplace conflicts in the kitchen.  That is admirable.  But the Bail Reform Act does not ask how a defendant behaves toward coworkers in a restaurant.  Rather, it asks whether there are conditions that will reasonably assure his appearance and the safety of the community. Defendant has already answered that question by demonstrating how he responds to law enforcement authority: with a punch, two bites, and a tree branch to the head.

Defendant also emphasizes that he has no prior convictions and no history of failure to appear.  But in the span of two days, he was arrested for DUI, released on a $5,000 bond with conditions requiring compliance with the law, and then the very next morning fled from and violently assaulted a federal officer.  The absence of a prior record does not establish a track record of compliance — it simply means there is no track record.  What there is, is a track record of March 10, 2026.

When DO Loper attempted to take him into custody, defendant did not submit, negotiate, or comply — he ran, punched, bit, weaponized a tree branch, and bit again. Electronic monitoring cannot address this danger.  The Ninth Circuit has recognized that "electronic monitoring does not prevent a defendant from committing crimes within the monitoring radius."  United States v. Hir, 517 F.3d 1081, 1092 n.11 (9th Cir. 2008).

**D.    Defendant's Immigration Status Provides an Independent Additional Incentive to Flee That the Court May Properly Consider.**

Defendant argues that the Court may not consider his immigration status or the existence of the administrative arrest warrant under the Bail Reform Act, citing United States v. Santos-Flores, 794 F.3d 1088 (9th Cir. 2015).  The government agrees, as a general matter, that immigration status may not serve as a categorical basis for detention.  Id. at 1090.  But Santos-Flores does not prohibit the Court from considering, as part of an individualized § 3142(g) analysis, the concrete and specific incentives that defendant's immigration situation creates for nonappearance.  That is a different question.

The most probative fact about defendant's state of mind when he fled from DO Loper, a uniformed ICE officer, is that he was the subject of an active immigration arrest warrant. The most plausible explanation for why defendant ran hard and fast from an officer wearing a vest that said "POLICE/ICE" is precisely that he understood the immigration implications of being taken into ICE custody.  That is not a categorical detention determination based on immigration status.  It is a factual observation about why defendant had a specific and powerful incentive to avoid this particular arrest on this particular morning.  The Bail Reform Act permits the Court to consider it.

Defendant's brief suggests that the Court should ignore this dynamic entirely, or alternatively conclude that if defendant is subject to an ICE hold he would never be released to the community anyway and therefore flight risk is moot.  That argument proves too

much. The question under the Bail Reform Act is whether defendant will appear as required in this federal criminal proceeding.  If defendant has an incentive to avoid immigration proceedings — and the events of March 10 strongly suggest he does — that incentive applies equally to federal criminal court appearances.

**E.    The Proposed Conditions of Release Are Inadequate.**

Defendant proposes release on a $5,000 appearance bond with two sureties: his fiancée, a U.S. citizen earning approximately $48,000–$50,000 annually, and a cousin earning approximately $75,000 annually.  He also proposes GPS monitoring and home detention.  None of these conditions, alone or in combination, can reasonably assure defendant's appearance *or* the safety of the community.

On the financial surety: the purpose of a bail bond "is not served unless losing the sum would be a deeply-felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee." United States v. Townsend, 897 F.2d 989, 996 (9th Cir. 1990).  Defendant has already shown by fleeing from and assaulting a federal officer the morning after posting a $5,000 bond in his DUI case that a $5,000 bond does not deter him. The proposed sureties, while financially able, offer no meaningful assurance given that defendant has already demonstrated his willingness to absorb serious physical consequences rather than submit to law enforcement.

On family ties: defendant presented an extraordinary showing of community support at the March 19 hearing.  Nearly 30 people appeared in court; over 25 letters of support were submitted.  Judge Christensen acknowledged and was moved by this showing.  And yet she still ordered detention, because as the Ninth Circuit has explained,

13

family support, no matter how genuine and extensive, does not neutralize a well-founded risk of flight or danger.  Hir, 517 F.3d at 1091 (affirming detention even where defendant "was supported at his court appearances by friends and family members, several of whom were willing to act as sureties").  The same analysis applies here.

On GPS monitoring and home detention: these conditions depend entirely on voluntary compliance, which is "a critical flaw" where a defendant has shown he will not comply.  Hir, 517 F.3d at 1092; see also United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990).  Moreover, as noted above, electronic monitoring cannot prevent defendant from assaulting supervision officers or others during any required in-person contact.

**F.    The Magistrate Judge's Findings Were Correct, and the District Court Does Not Have to Start Over.**

Defendant urges this Court to conduct a fresh review with no deference to Judge Christensen's findings, relying on Koenig's statement that review is de novo.  But Koenig also states that the district court "is not required to start over . . . and proceed as if the magistrate's decision and findings did not exist."  912 F.2d at 1192-93.  Instead, the district court should determine "whether the magistrate's findings are correct, with no deference."  Id. ("The point is that the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate.").  Judge Christensen had the benefit of hearing argument from both sides, reviewing the sworn affidavit, examining the photographs and character letters, and reflecting on the full record. Her conclusion — that this is a case involving a level of violence she had "never seen anything like" and that

14

defendant poses both a flight risk and a danger to the community — reflects a careful, individualized analysis that is fully supported by the record.

Defendant's appeal presents no new evidence.  It challenges the weight of the evidence on the tree branch based on speculation.  It argues that other § 111 cases resulted in acquittals.  It reasserts the community-ties evidence that Judge Christensen already considered and gave appropriate weight.  None of this justifies disturbing the detention order.  The same analysis that led to detention on March 19 leads to the same conclusion today.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court affirm the magistrate judge's detention order and deny defendant's appeal.

Dated: April 3, 2026                     Respectfully submitted,

                                         TODD BLANCHE
                                         Deputy Attorney General

                                         BILAL A. ESSAYLI
                                         First Assistant United States
                                         Attorney

                                         ALEXANDER B. SCHWAB
                                         Assistant United States Attorney
                                         Acting Chief, Criminal Division


                                            /s/ Eric L. Mackie
                                         ERIC L. MACKIE
                                         Assistant United States Attorneys

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA